**E-FILED**
Friday, 21 October, 2016  05:16:42 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| FIRST MIDWEST BANK., an Illinois Banking corporation  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>HONKAMP KRUEGER & CO., P.C., An Iowa professional corporation  )<br><br>Defendant.  ) | Case No.<br><br>JURY DEMAND |

**COMPLAINT**

Plaintiff, First Midwest Bank, an Illinois banking corporation, ("First Midwest") as assignee of Old CSH, Inc, f/k/a Country Stone Holdings, Inc. and affiliates[1] ("Country Stone"), by its attorneys, Dykema Gossett PLLC, for its Complaint against Defendant Honkamp Krueger & Co., P.C. ("Honkamp") states as follows:

**PARTIES**

1.      First Midwest is an Illinois banking corporation with its principal place of business in Itasca, Illinois.  On October 23, 2014, Country Stone filed a voluntary petition for relief under chapter 11 of title 11 of the United States code in the United States Bankruptcy Court for the Central District of Illinois.  Country Stone's joint Plan of Liquidation was confirmed on November 20, 2015.  Pursuant to (a) the Order Confirming the Joint Plan of Liquidation, and (b) the Order Granting Committee's Motion to Approve Settlement Agreement

---

[1] The Assignors are the bankruptcy estates of Old CSH, Inc., Old CS&S, Inc., Old CS&SM, Inc., Old CS&SW, Inc., Old CS, Inc., Old FWLS, Inc., Old GTI, LLC, Old IF, Inc., Old IL&G, Inc., Old IS, Inc., Old MPC, Inc., Old QCE, Inc., Old R&DCPI, Inc., Old R&DCW, Inc., Old R&DP, Inc., Old RIC, Inc., and Old WS&G, Inc.

between the Committee on behalf of Country Stone and First Midwest, First Midwest is the assignee of Country Stone's claims against Honkamp.

2.      Defendant Honkamp, a public accounting firm, is an Iowa professional corporation with its principal place of business in Dubuque, Iowa.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1), as the parties are citizens of different States and the amount in controversy exceeds $75,000.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because defendant maintains an office within this District and a substantial part of the events giving rise to the claims alleged in this Complaint occurred within this District.

## BACKGROUND

5.      In or about 2009, Honkamp was engaged as the outside auditor for Country Stone, a company that manufactured and sold lawn and garden products, commencing with the year ending December 31, 2009.  Country Stone had locations in Illinois, Iowa, Indiana, Georgia and Minnesota.

6.      For each of the years ending 2009 to 2012, Honkamp completed audits of Country Stone's financial statements and delivered to Country Stone a written Independent Audit Report (collectively, "Audit Reports").  Honkamp provided audit reports to Country Stone on or about April, 2010 for the 2009 year-end audit, on or about May 4, 2011 for the 2010 year-end audit, on or about May 1, 2012 for the 2011 year-end audit, and on or about May 21, 2013 for the 2012 year-end audit.  Honkamp had begun work on the audit report for the year ending December 31, 2013, but did not complete it.

7.     The purpose of an audit, according to the American Institute of Certified Public Accountants ("AICPA"), "is to provide financial statement users with an opinion by the auditor on whether the financial statements are presented fairly, in all material respects, in accordance with an applicable financial reporting framework, which enhances the degree of confidence that intended users can place in the financial statements." Audit and Attest Standards, AU-C § 200.04 (Am. Inst. of Certified Pub. Accountants 2012). In its Audit Reports, Honkamp further stated that "[a]n audit . . . includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation."

**First Midwest Becomes Country Stone's Lender**

8.     Country Stone relied upon Honkamp to provide an accurate opinion regarding accuracy of Country Stone's financial statements.  In reliance on Honkamp's 2009 Audit and oral assurances about the valuation of Country Stone's inventory, on March 21, 2011, Country Stone entered into a Loan Agreement with First Midwest Bank, which provided financing to Country Stone ("Initial Loan Agreement"). The credit facility included a working capital line of credit for $23,500,000, a Term Promissory Note for $9,000,000 and a Real Estate Promissory Note for $2,040,000 for a total of $34,540,000.

9.     Under the terms of the Loan Agreement, First Midwest loaned money to Country Stone under the working capital line of credit based on borrowing base certificates in which Country Stone set forth the value of various types of assets held by Country Stone, including, most notably, inventory. Country Stone was entitled to borrow up to amounts equal to the product of these percentages multiplied against the value of an asset category.  For example, under the loan documents, Country Stone was allowed to borrow up to 60% of the value of its inventory.

10.     Thus, if Country Stone wished to draw on the working capital line of credit, its borrowing base certificate needed to show assets sufficient to allow the amount to be borrowed.

11.     The Loan Agreement specifically required Country Stone to provide First Midwest Bank with year-end audited financial statements.  Absent the requirement for audited financial statements in the loan agreement, as a privately-held company, Country Stone would not have had its financial statements audited by a public accounting firm.

12.     Honkamp continued to provide audited financial statements for each subsequent year though year-end 2012.

### Country Stone Extends the Working Capital Line of Credit With First Midwest

13.     Country Stone's business continued to grow.  With this increased growth came an increase in Country Stone's capital needs.

14.     In or about May 2011, Honkamp submitted an audit of Country Stone's financial statements for year-end 2010 ("2010 Audit"), opining once again that Country Stone's financial statements present "fairly, in all material respects, the financial position of [Country Stone] . . . in conformity with accounting principles generally acceptable in the United States of America." The balance sheet, in particular, showed total assets of $59,109,945.00, an increase of approximately $11 million, including an approximate $5 million increase in the value of Country Stone's inventory. The 2010 Audit additionally reflected an increase of just over $3 million in Country Stone's sales over the 2009 Audit, netting a near $2.5 million increase in gross profit and $367,541 in net income.

15.     Relying in part on the 2010 Audit,  Country Stone sought a renewal and extension of its loan facility with First Midwest.  In November 2011, Country Stone renewed and increased its loans from First Midwest.  In particular, the Working Capital Line of Credit ("WCLOC") was

increased by $6,000,000 to $29,500,000.  The other notes were increased as well, resulting in a total credit facility of $43,003,480.

16.     In or about May 2012, Honkamp submitted an audit of Country Stone's financial statements for year-end 2011 ("2011 Audit"), opining once again that Country Stone's financial statements present "fairly, in all material respects, the financial position of [Country Stone] . . . in conformity with accounting principles generally acceptable in the United States of America." The balance sheet, in particular, showed total assets of $67,595,226, an increase of nearly $12 million, including a nearly $8 million increase in the value of Country Stone's inventory. According to the 2011 Audit, Country Stone's 2011 sales increased by nearly $9 million, netting more than a $5 million increase in gross profit and $940,906 in net income.

17.     Based in part on the Country Stone's financial statements, First Midwest renewed and increased its loans by approximately $1.5 million on or about November 30, 2012. Then, again on the strength of Country Stone's financial statements, on February 2, 2013, First Midwest extended an additional $5 million line of credit to Country Stone, in the form of that certain Short-Term Working Capital Line of Credit Promissory Note ("Short-Term Note").

18.     In or about May 2013, Honkamp provided an audit of Country Stone's financial statements for year-end 2012, opining, with a limited qualification, once again that Country Stone's financial statements present "fairly, in all material respects, the financial position of [Country Stone] . . . in conformity with accounting principles generally acceptable in the United States of America."  The balance sheet, in particular, showed total assets of $80,699,144, an increase of more than $13 million, including a nearly $8 million increase in the value of Country Stone's inventory ("2012 Audit").   Country Stone's 2012 sales increased by roughly

$10,500,000 million, netting more than a $5 million increase in gross profit and $2,698,872 in net income.

19.    On the basis of the 2012 Audit, Country Stone sought and received from First Midwest an increase of its available credit in August 2013, this time by approximately $13 million, via that certain First Amended and Restated Loan Agreement dated August 23, 2013.

20.    Such increases would not have occurred but for the Audits provided by Honkamp.

**Country Stone and Honkamp Uncover A $30 Million Accounting Error**

21.    Sometime in 2014 Country Stone discovered that its inventory had been substantially overvalued on its financial statements due to an accounting error.  Due to this error, as of December 31, 2013, Country Stone's inventory was overvalued on its financial statements by more than $30 million, and, as a result, Country Stone's borrowings were substantially in excess of the amounts allowed under the Loan Documents.

22.    Prior to that restatement, Country Stone's audited financial statements showed that Country Stone was both profitable and had a substantial positive net worth on its balance sheet.

23.    Throughout Honkamp's engagement as Country Stone's outside auditor, it failed to discover Country Stone's erroneous inventory calculations.

24.    Honkamp knew that Country Stone would rely upon Honkamp's annual audit review of the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by Country Stone's management.

25.    Country Stone relied upon Honkamp to adhere to generally accepted audit standards in the United States in performing the annual audits.

26.     Country Stone relied upon the accuracy of its financial statements to make business decisions, including whether to expand its businesses, invest in new products, purchase inventory, hire employees and borrow funds.

27.     As a result of the errors in the financial statement, Country Stone's borrowing from First Midwest exceeded the terms of its Loan Documents by roughly $16 million.  As a result of these borrowings, Country Stone was insolvent and unable to continue its business.

28.     Country Stone subsequently filed for bankruptcy protection and its assets were liquidated.

## COUNT I
### (PROFESSIONAL NEGLIGENCE)

29.     First Midwest restates and realleges paragraphs 1-28 of its Complaint as though fully set forth herein.

30.     Honkamp knew that Country Stone would rely on the Audits in its making its business decisions, including borrowings from First Midwest Bank.

31.     It was reasonable for First Midwest to rely on the Audits provided by Honkamp, especially considering the repeated assurances Honkamp provided to First Midwest.

32.     Country Stone did, in fact, rely on the Audits making business decisions, and specifically, the decisions to initiate, extend and increase financing from First Midwest.

33.     Honkamp owed a duty to Country Stone to prepare the Audits utilizing the reasonable care and competence required of an auditor.

34.     Despite the duty owed it to Country Stone, Honkamp failed to properly examine Country Stone's finances, and, as a result, failed to uncover a substantial error in Country Stone's accounting methods for valuing its inventory.

35.     Honkamp, therefore, breached its duty to Country Stone by failing to prepare the Audits according to Generally Accepted Auditing Standards (GAAS).

36.     As a direct and proximate result of Honkamp's professional negligence, Country Stone has suffered damages in an amount to be proven at trial.

WHEREFORE, First Midwest, as assignee of Country Stone, requests that this Court enter judgment in its favor and against Honkamp in an amount to be determined at trial, and award it such other and further relief as this Court deems proper.

## COUNT II
### (NEGLIGENT MISREPRESENTATION)

37.     First Midwest restates and realleges paragraphs 1-28 of its Complaint as though fully set forth herein.

38.     As professional auditors hired to provide the Audits, Honkamp was at all relevant times in the business of providing information. As such, Honkamp owed a duty of care in supplying information to Country Stone who used and relied upon the information.

39.     Despite its duty to provide accurate information, Honkamp supplied false information in its 2009, 2010, 2011, and 2012 Audits.

40.     Honkamp failed to exercise reasonable care in making the foregoing false representations to Country Stone.

41.     Moreover, Honkamp made the foregoing false representations knowing that Country Stone intended to use and rely upon the Audits.

42.     Country Stone did, in fact, rely on the Audits in making business decisions and specifically, its decisions to initiate, extend and increase financing from First Midwest.

8

43.     Country Stone was justified in relying upon the false information provided by Honkamp.

44.     As a direct and proximate result of Honkamp's negligence, Country Stone has suffered damages.

WHEREFORE, First Midwest, as assignee of Country Stone, requests that this Court enter judgment in its favor and against Honkamp in an amount to be determined at trial, and award it such other and further relief as this Court deems proper.

**COUNT III**
**(BREACH OF CONTRACT)**

45.     First Midwest restates and realleges paragraphs 1-28 of its Complaint as though fully set forth herein.

46.     Each year, Country Stone and Honkamp entered into a contract set forth in an engagement letter setting forth the terms and conditions of Honkamp's audit work.

47.     Under these terms, Country Stone would pay Honkamp for providing various services, including but not limited to conducting an audit of Country Stone's consolidated financial statements and providing an opinion about whether Country Stone's financial statement fairly presented, in all material respects, its financial position and the results of its operations and its cash flows for the year then ending in conformity with accounting principles generally accepted in the United States of America.

48.     Upon information and belief, Country Stone performed its obligations under the foregoing contracts.

49.     Honkamp breached these contracts by, among other things, failing to identify errors in Country Stone's financial statements, failing to conduct the audit in conformity with generally accepted auditing standards, and improperly opining that Country Stone's financial

9

statements fairly presented in all material respects Country Stone's financial position and conformed with accounting principles generally accepted in the United States.

50.     Country Stone has been damaged by Honkamp's breach of the foregoing contracts in an amount to be determined at trial.

WHEREFORE, First Midwest, as assignee of Country Stone, requests that this Court enter judgment in its favor and against Honkamp in an amount to be determined at trial, and award it such other and further relief as this Court deems proper.

Dated:  October 21, 2016                              **FIRST MIDWEST BANK**

By   s/ Jennifer A. Warner
                                                    One of Its Attorneys

Patrick T. Stanton
PStanton@Dykema.com
Heather K. Kramer
HKramer@Dykema.com
Jennifer A. Warner
JWarner@Dykema.com
DYKEMA GOSSETT PLLC
10 S. Wacker Dr., Ste. 2300
Chicago, IL 60606
(312) 876-1700